■ HERBERT LAZAR, Appellant, v NICO INDUSTRIES, INC., Respondent.—Order and judgment, Supreme Court, New York County (Myriam J. Altman, J.), entered on or about September 25, 1989 and entered on October 3, 1989, respectively, which granted the defendant's motion for summary judgment dismissing the complaint and which denied plaintiff's cross motion for summary judgment dismissing defendant's answer, unanimously modified, on the law, to deny defendant's motion for summary judgment, to vacate the judgment entered thereon, to remand the matter for trial, and as so modified, affirmed, without costs.

At issue is plaintiff's entitlement to the final installment payment of $100,000 alleged to be due under the terms of a 10-year management consulting agreement with defendant's predecessor in interest, whose obligation has been assumed by defendant. The parties agree that resolution of this issue is controlled by the following paragraph of a modification agreement dated August 30, 1978 (immaterial matter deleted): "Inc. [Lazar Delaware, Inc.] will continue to retain Herbert and Leonard as consultants for a 10-year period commencing August 1, 1978 and ending July 31, 1987 and, in connection therewith, will (i) pay to each of Herbert and Leonard annual

remuneration in an amount equal to $2,000. * * * At such time, and for so long, as (i) Inc.'s (and all parent and subsidiary companies) after-tax, consolidated operations (as shown on their consolidated federal income tax returns) are *once again profitable* * * * each of the fees provided for in the preceding sentence shall be increased to the lesser of ½ of such profits or $100,000." (Emphasis added.)

In 1985 defendant and its subsidiaries were acquired by a publicly held corporation, LVI Group, Inc. In support of the motion for summary judgment, defendant Nico submitted financial statements which had been filed with the Securities and Exchange Commission indicating that Nico's parent, LVI Group, Inc., and its subsidiaries, had suffered consolidated after-tax net losses of $24,243,496 before payment of extraordinary items and dividends during its fiscal year beginning January 1, 1988, and that LVI Group, Inc. and its subsidiaries also sustained consolidated after-tax net losses before payment of extraordinary items and dividends totaling $1,591,623 for the four quarters commencing July 1, 1987 and ending June 30, 1988. Thus defendant urges that with the advent of several new arrivals to the corporate cluster, and the inclusion of their losses (in significant part consisting of start-up costs for entirely new ventures) the "consolidated operations" are not "profitable", and therefore the condition precedent for payment has not been met by plaintiff as a matter of law. The motion court has adopted this view of the matter, despite plaintiff's showing that if the 1978 entities alone were considered, a condition of profitability in the millions would result.

We must disagree with the conclusion reached by the IAS court. First of all, while we do not think the issue is susceptible to summary disposition, we would point out that the language of the modification agreement appears to us, if anything, to favor the plaintiff's position. The emphasized words, "once *again* profitable", could well be understood as a reference intended to apply to the constituent entities of the enterprise in being as of the date of the writing. However this is, in our view, too thin a reed, by itself, to support summary judgment in favor of plaintiff, and we sustain that portion of the order under review denying such relief. What we conclude is that the cited portion of the modification agreement, while not ambiguous on its face, does present a case of latent ambiguity with respect to the intent of the parties if the enterprise were to embark upon an expansive acquisition program, with a likelihood of heavy capital expenditure at the outset. From the writing alone we cannot determine to what

extent the parties contemplated these future mergers and acquisitions which were destined to have so severe and adverse short-term impact on the annual consolidated financial statement. Such latent ambiguity, arising from events taking place post the modification agreement, presents issues of fact which only the receipt of parol evidence at a trial can resolve. *(See,* Richardson, Evidence § 629 [Prince 10th ed].) Concur—Ross, J. P., Carro, Wallach and Rubin, JJ.